Rebecca S. HOLLENBAUGH and Fred K. Philburn, Plaintiffs,

v.

BOARD OF TRUSTEES OF CARNE-GIE FREE LIBRARY, OF CON-NELLSVILLE, PENNSYLVANIA, et al., Defendants.

Civ. A. No. 74–827.

United States District Court,
W. D. Pennsylvania.

Dec. 29, 1975.

William A. Tantlinger, Warman & Warman, Uniontown, Pa., for plaintiffs.

Ernest P. DeHaas, III, Fred C. Adams, Uniontown, Pa., for defendants.

## OPINION

GOURLEY, Senior District Judge.

This is a civil rights proceeding brought by the plaintiffs, Rebecca S. Hollenbaugh and Fred K. Philburn, against the Carnegie Free Library and its Board of Trustees seeking declaratory and injunctive relief and monetary damages to redress deprivations of rights and privileges guaranteed by the First, Fourth, Ninth, and Fourteenth Amendments of the United States Constitution, Article 1, Section 27 of the Pennsylvania Constitution, and 42 U.S.C., Section

1983.[1] The immediate matter before the Court is defendants' Motion for Summary Judgment.[2]

The Court has conducted a full and complete hearing and has considered the briefs and arguments of counsel and must conclude that defendants' Motion for Summary Judgment should be granted. The Court is of the firm belief that the record does not support plaintiffs' contention that the requisite state involvement in the complained of action was present.

The dispositive issue for this Court's determination is whether or not the Board of Trustees, by their decision to dismiss the plaintiffs from their employment, were acting in some official capacity or "under the color of state law". For purposes of this proceeding the Court will refer only to the plaintiffs' claim under 42 U.S.C., Section 1983, because the state action analysis is the same for each of the plaintiffs' claims and if the requisite state action is not found all of the claims will fail.

The facts may briefly be stated. The defendants are the Board of Trustees of the Carnegie Free Library, a non profit Pennsylvania corporation. The Board of Trustees was composed of twenty members, nine of whom were life trustees and eleven of whom were appointed by various municipalities which contributed money to the library.[3] The plaintiff, Hollenbaugh, was the library's head librarian who in November, 1972, discovered that she was pregnant with the child of plaintiff, Philburn, who was also an employee at said library. In December of 1972, the plaintiff, Philburn, left his wife and moved in with the plaintiff, Hollenbaugh, who gave birth to their child in February of 1973. On August 9, 1973, a special meeting of the Board of Trustees of the library was held and the plaintiffs' employment was terminated.

■ The law is clear that a Civil Rights action cannot lie against a private person unless that person was "acting under the color of state law" or in some official capacity and that it resulted in depriving another person of a right, privilege, or immunity secured by the Constitution and the laws of the United States. The plaintiffs contend, that since fifteen of the twenty-four authorized members of the Board of Trustees may be appointed by the local governmental agencies which support the library, and since a large portion of the library's operating expenses come from local and state sources, the decision of the Board of Trustees to terminate plaintiffs' employment can only be viewed as an affirmative and purposeful state action which impinged upon the plaintiffs' rights under the Constitution of the laws of the United States.[4]

■ The mere fact that money is received from state and local governments is not enough to make the action of the defendants state action.

"Otherwise, all kinds of contractors and enterprises, increasingly dependent upon governmental business for much larger portions of income than those here in question, would find themselves charged with 'state action' in the performance of all kinds of

1. Section 1983 provides as follows: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Following a Motion to Dismiss filed by defendants on October 29, 1974, the Court issued a Memorandum Order on December 4, 1974, dismissing the action against the Carnegie Free Library since the entity was not a person as required under the Civil Rights Statutes.

3. In the year ending December 31, 1973, the library had a total income for operating expenditures of $64,402.00 and of that amount it received $16,793.00 from the Commonwealth of Pennsylvania and $41,855.00 from local governmental agencies.

4. In 1973 eleven of the twenty members of the Board were appointed by the local governmental agencies.

functions we still consider and treat as essentially 'private' for all presently relevant purposes." *Grossner v. Trustees of Columbia University in the City of New York*, 287 F.Supp. 535 (S.D.New York, 1968).

Nor does the mere existence of a detailed regulation of a private entity make every act or every regulated act of the entity the action of the state, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Jackson v. Metropolitan Edison Company*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). To constitute "state action" the specific activities complained of must have been done "under [the] color of state law", *Samuel v. University of Pittsburgh*, 375 F.Supp. 1119 (W.D.Pa. 1974).

A careful and exhaustive review of the pleadings reveals that those governmental employees who served on the library's Board of Trustees did so in a private capacity. It is not apparent to the Court that those governmental agencies to which those trustees belonged influenced or granted approval to the day to day operations of the library, more particularly the dismissal of the plaintiffs.

In view of the above, the Court cannot conclude that the Commonwealth of Pennsylvania or any agency or agent of the Commonwealth had affirmatively encouraged or approved of the dismissal of the plaintiffs and, accordingly, the plaintiffs have failed to establish the requisite state involvement to sustain the jurisdiction of this Court.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.

### ORDER

And now, this 29 day of December, 1975, defendants' Motion for Summary Judgment is hereby granted.